Marc A. Rapaport [MR-5775]
LAW OFFICE OF MARC A. RAPAPORT
350 Fifth Avenue, Suite 4400
New York, New York 10118
(212) 382-1600
Attorneys for Plaintiff

RECEIVED
OCT 12 2005
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

ALVIN DAVID,                              :

          Plaintiff,                      :

                                          :

          -against-                       :

KONICA MINOLTA BUSINESS                   :
SOLUTIONS, U.S.A., INC.                   :

                                          :

                                          :

          Defendant.                      :
----------------------------------------------------X

05 Civ. 8647 - (LAK)

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

*ECF CASE*

Plaintiff, Alvin David ("Plaintiff" or "Mr. David"), by and through his

undersigned counsel, Marc A. Rapaport, Esq., as and for his Complaint in this action

against Konica Minolta Business Solutions, U.S.A., Inc. ("Konica" or "Defendant"),

alleges as follows:

### NATURE OF THE CLAIMS

1.       This is a civil action for declaratory, injunctive and equitable relief, as

well as monetary damages, to redress Defendant's unlawful employment practices

against Plaintiff, including the violation of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12101 *et seq.*, by: (a) subjecting Plaintiff to termination of his employment

upon his exhaustion of his approved leave under the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, *et seq.*, and refusing to investigate and interact with Plaintiff regarding his request for a reasonable accommodation in the form of an additional one-month leave of absence; and (b) maintaining a discriminatory and unlawful personnel policy of terminating employees who are unable to return to work after the exhaustion of their approved FMLA leave periods.

2.      This action also seeks redress for the Defendant's unlawful restraint of, and/or interference with, Plaintiff's exercise of his rights under the FMLA, by subjecting Plaintiff to the termination of his employment in retaliation for his exercise of his right to a leave of absence.

3.      Plaintiff also alleges that the Defendant's actions constituted unlawful discrimination on the basis of disability and/perceived disability, as well as discrimination based on age, in violation of New York Executive Law, §290 *et seq.* (the New York State Human Rights Law) and the New York City Administrative Code, §8-101 *et seq.* (the New York City Human Rights Law).

## JURISDICTION AND VENUE

4.      Plaintiff was and still is a citizen of the State of New York.  At all relevant times, Plaintiff was an "eligible employee" and or an "employee" under all relevant statutes.

5.      Upon information and belief, Defendant is a corporation incorporated under the laws of the State of New York, and maintains an office for the transaction of business in the City, County and State of New York, at 655 Third Avenue, New York, New York.  At all relevant times, Konica was a "covered employer" and/or an "employer" under all relevant statutes, and employed more than 50 employees.

2

6.      This action is brought to remedy: (a) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (1994 and Supp. 1999) (the "ADA"); and (b) retaliatory and unlawful discharge of Mr. David for exercising his rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA") .

7.      Supplemental jurisdiction pursuant to 28 U.S.C. §1367 is sought to remedy discrimination on the basis disability, perceived disability, and age in violation of the New York State Human Rights Law and the New York City Human Rights Law.

8.      Attorneys fees and punitive damages are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), New York Executive Law § 297(9), and New York City Administrative Code, §8-502.

9.      As the Plaintiff's residence  and the Defendant's offices are in, and the unlawful practices complained of herein occurred within the Southern District of New York, venue is proper in this District pursuant to 42 U.S.C. §2000e-5 (f)(3) and 29 U.S.C. §1391(b).

10.     The acts complained of in this suit concern the Defendant's discriminatory, unlawful and retaliatory termination of Plaintiff, who had been employed as a copier technician by the Defendant and/or its predecessor entities for a period of more than thirty-one years.

## ADMINISTRATIVE COMPLIANCE

11.     On January 14, 2005, Plaintiff filed charges, pursuant to the ADA with the United States Equal Employment Opportunity Commission. This matter was assigned EEOC Charge Number 160-2005-00618. A Notice of Right-to-Sue was issued by the United States EEOC, New York District Office on July 14, 2005. A copy of this notice is

3

annexed hereto as Exhibit "A". Plaintiff received the Notice of Right to Sue on July 18, 2005.

12.    Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

13.    Any and all other prerequisites to the filing of this suite have been met.

## FACTUAL ALLEGATIONS TO ALL CAUSES OF ACTION

14.    On or about March 12, 1973, Mr. David began working as a Copier Service Technician with defendant's predecessor, a company known as Royal Business Machines, Inc. ("Royal") which later became Litton America Co. ("Litton"). Mr. David remained in his position, repairing and servicing copiers in the New York metropolitan area for the following thirty one years.

15.    As exemplified by the length of his employment with the Defendant and its predecessors, Mr. David was a loyal employee, whose work performance was excellent. During his thirty-one years of employment, Mr. David received exemplary performance reports. At all relevant times, Mr. David had the skills, experience, and knowledge required to fully perform all of the essential functions of his position.

16.    Although Mr. David remained in his position for three decades, the corporate identity of his employer repeatedly changed due to takeovers and mergers in the copier industry. As a result of these changes, Mr. David's employer became Konica Business Technologies, Inc. ("KBTI"). Subsequently, due to a further merger, KBTI was absorbed into the entity known as Konica Minolta Business Solutions, U.S.A., Inc.

4

17.     Plaintiff's principal work responsibilities involved the maintenance and repair of copy machines located on the premises of the Defendant's customers in New York City.

18.     In or about 2000, the Defendant rewarded Mr. David for his loyalty and exceptional service by promoting him to the title of Senior Service Technician. On another occasion, Mr. David's also received the title "Senior Document Imaging Specialist". In 2003, Mr. David received a special commemoration for the thirtieth anniversary of his employment.

19.     At all relevant times, Mr. David was based in Defendant's Manhattan office (hereinafter the "Manhattan Office"), and he was assigned to service the Defendants' customers who were located in Upper Manhattan, Harlem, and the Bronx.

20.     At all relevant times, Mr. David's immediate supervisor was Carlo Riccobono, who was also based in the Defendant's Manhattan Office.

21.     On or about May 28, 2004, Mr. David suffered severe physical injuries during the course of his employment as a result of an automobile accident (hereinafter the "Accident"). The Accident occurred while Mr. David was driving from the Manhattan Office to repair a copy machine at Barnard College, located at the intersection of Broadway and West 120th Street in Manhattan. While Mr. David was traveling west on 120th Street, the passenger side of his vehicle was struck by a vehicle that was traveling south on Broadway. The vehicle that struck Mr. David's vehicle had disregarded a red light signal.

22.     As a result of the Accident, Mr. David suffered injuries, including but not limited to lateral epicondylitys and carpel tunnel syndrome, that caused him to be

5

disabled within the meaning of the ADA, and which caused Mr. David to be substantially limited in performing tasks of central importance to his life.

23.    Mr. David's injuries and impairments also caused him to suffer physical and/or medical impairments, as defined under the Administrative Code of the City of New York, § 8-102(16)(b)(1), in that Mr. David suffered, among other injuries, impairments of his neurological and musculoskeletal systems.

24.    Mr. David's injuries required continuing treatment by a health care provider, and constituted a Serious Health Condition as defined under the FMLA. As a result of the injuries that Mr. David sustained in the Accident, he was entitled to the benefits and protections provided to employees under FMLA.

25.    Because of the severe injuries sustained by Mr. David, and in compliance with the Defendant's personnel policies and with the provisions of the FMLA, on or about June 16, 2005, Mr. David provided the Defendant with a Certification executed by his treating neurologist, Dr. Michael Daras, M.D. ("Dr. Daras").

26.    Dr. Daras certified that Mr. David was unable to work as a result of the injuries that he sustained in the Accident, and that Mr. David needed to undergo physical therapy two times per week. Dr. Daras further stated in his Certification that Mr. David "should be expected to return to work in Sept. 2004."

27.    Dr. Daras also provided Defendant with a separate statement, dated June 7, 2004, detailing Mr. David's physical limitations. Among other things, Dr. Daras wrote that Mr. David was restricted from engaging in "lifting from the floor, squatting, bending", and that his weight lifting capabilities were limited to "11-25 lbs."

6

28.     Based on Dr. Daras' submissions, Mr. David's request for a FMLA leave of absence was approved by the Defendant.   However, even during the early stages of Mr. David's leave of absence, Defendant's Benefits and Disability Specialist, Rita Beavis ("Ms. Beavis") repeatedly threatened to terminate Mr. David's employment unless Dr. Daras was willing to certify that Mr. David could return to work prior to the expiration of Mr. David's FMLA leave of absence.   In a letter to Mr. David, dated June 11, 2005, Ms. Beavis represented to Mr. David that pursuant to the Defendant's Leave Program, he would be "subject to termination of employment" if he was not able to return to work upon the expiration of his FMLA leave period.

29.     In a further letter to Mr. David, dated July 23, 2004, Ms. Beavis represented that Mr. David's 12-week FMLA entitlement would end on August 27, 2004, and that unless Dr. Daras would alter his prior prognosis regarding Mr. David's ability to return to work, Mr. David "will be subject to termination of employment."

30.     At the request of the Defendant, on or about August 26, 2005, Dr. Daras provided the Defendant with a Fitness-For-Duty Certification.   Dr. Daras wrote that Mr. David was unable to carry heavy objects and that he could not extend his right hand and left arm.   Dr. Daras further indicated that Mr. David would be able to return to work on September 30, 2005.

31.     In response to Dr. Daras' Certification, Ms. Beavis wrote to Mr. David, advising him that his employment was terminated, effective August 30, 2004, because Dr. Daras' return-to-work date was "past the maximum allowable time of August 27, 2004, granted for [Mr. David's] medical leave".   Like her prior letters, Ms. Beavis' August 31, 2004 letter quoted the provision in Defendant's Leave Policy that provided

7

for the "termination of employment" of employees who were unable to return to work upon the exhaustion of FMLA leave.

32.     At no point did the Defendant initiate a discussion with Mr. David concerning whether he required an accommodation for his known disabilities.

33.     Defendant terminated Mr. David's employment in retaliation for his exercising his rights under the FMLA.

34.     Defendant also discriminated against Mr. David by terminating his employment because Defendant regarded him as disabled, and/or because of his record of disabilities.

35.     Defendant further discriminated against Mr. David by failing to initiate a conversation or communication with him regarding a need for an accommodation for Mr. David's known disabilities.

36.     Defendant's  Leave Policy, pursuant to which employees who are unable to return to work following their exercise of FMLA leave are summarily terminated, is unlawfully discriminatory because it has a disparate and disproportionate impact upon disabled employees, who are more likely than non-disabled employees to require additional accommodations after the expiration of FMLA leave.

37.     Konica is obligated to consider requests by its disabled employees for reasonable accommodations, including but not limited to a request for a reasonable additional leave of absence following the expiration of a FMLA leave period, and to interact with employees in conjunction such requests for accommodation.

38.     In addition, Defendant discriminated against Mr. David by applying the Leave Policy in a discriminatory fashion by granting extensions of leave to younger

8

employees and by using the Leave Policy as a subterfuge to oust older employees,
including the Plaintiff, from employment. At the time Defendant terminated Mr. David's
employment, he was fifty-nine years of age.  Mr. David was treated differently than
younger employees, whose requests for additional leave were granted.

39.     Defendants did not interact with Mr. David with regard to his request for
an accommodation.

40.     Because there were approximately sixty repair technicians based in the
Defendant's Manhattan office, the Defendant could have accommodated Mr. David's
request for a thirty-day leave of absence under the ADA without experiencing undue
hardship in the conduct of the Defendant's business.

41.     Defendant failed to take any steps toward engaging in an interactive
process with Mr. David, such as asking about his condition and/or specific limitations or
offering to discuss the types of accommodations that could be made available to him.

**FIRST CAUSE OF ACTION**
(Violation of the Duty of Reasonable Accommodation Under the ADA)

42.     Plaintiff repeats and realleges each and every allegation contained in
paragraphs 1-41.

43.     Defendant violated its duty to provide Plaintiff with a reasonable
accommodation by failing to initiate a discussion with Plaintiff regarding the need for an
accommodation based on his known disability.

44.     Defendant further violated its duty to provide Plaintiff with a reasonable
accommodation  by summarily disregarding and rejecting the Plaintiff's request for a
thirty-day leave of absence following the expiration of plaintiff's twelve-week FMLA
leave period.

9

45.     Despite having received communications from Mr. David's treating neurologist regarding the nature of Mr. David's impairments, Defendant never discussed with Mr. David the types of accommodations that could be made available to him.

46.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
(Unlawful Personnel Policy/ Disparately Impact -- ADA)

47.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-46.

48.     Defendant violated (and, upon information and belief, continues to violate) its duties under the ADA by instituting and implementing a personnel policy pursuant to which employees who were unable to return to work upon the expiration of their FMLA leave periods were subjected to termination from employment.

49.     Defendant's unlawful policy of summarily terminating employees upon their exhaustion of leave disproportionately impacts disabled employees, who are more likely than non-disabled employees to need additional accommodations, including further leaves of absence, upon the expiration of their FMLA leave.

50.     Defendant's unlawful policy of summarily terminating employees who are unable to return to the work at the end of a FMLA leave period resulted in the unlawful termination of Mr. David's employment.

10

51.     As a proximate result of Defendant's unlawful and discriminatory

conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic

damages, including, but not limited to, loss of past and future income, compensation and

benefits for which he is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
(Retaliation in Violation of the Family Medical Leave Act)

52.     Plaintiff repeats and realleges each and every allegation contained in

paragraphs 1-51.

53.     Defendant retaliated against Plaintiff by, *inter alia*, terminating his

employment in violation of the FMLA for exercising and/or attempting to exercise, his

right to take a 12-week protected medical leave because of a serious health condition that

made him temporarily unable to perform the functions of his job.

54.     As a direct and proximate result of Defendant's unlawful and

discriminatory conduct, Plaintiff has suffered, and continues to suffer, monetary and/or

economic damages, including, but not limited to, loss of past and future income,

compensation and benefits, for which he is entitled to an award of monetary damages and

other relief.

### FOURTH CAUSE OF ACTION
(Violation of the New York City Human Rights Law – Disability Discrimination)

55.     Plaintiff repeats and realleges each and every allegation contained in

paragraphs 1-54.

56.     Defendant has willfully and intentionally discriminated against Plaintiff in

violation of the New York City Human Rights Law by denying him equal terms and

conditions of employment, including but not limited to, terminating his employment,

despite the fact that at all times he performed his duties in a professional and competent

11

manner, because of his disability, because Defendant regarded him as disabled, and/or because of Plaintiff's record of disability.

57.     As a result of the foregoing acts of the Defendant, Plaintiff was discriminated against in violation of New York City Human Rights Law (NYC Administrative Code §§ 8-502 and 8-107 et seq., and has thereby caused Plaintiff to suffer damages, including but not limited to economic injuries, lost employment opportunities, and emotional distress.

58.     As a proximate result of the Defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

### FIFTH CAUSE OF ACTION
(Violation of the New York City Human Rights Law – Age Discrimination)

59.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-58.

60.     Defendant has discriminated against Plaintiff in violation of the New York City Human Rights Law by denying him equal terms and conditions of employment, including but not limited to, terminating his employment, despite the fact that at all times he performed his duties in a professional and competent manner, because of his age.

61.     Defendant willfully, intentionally and without justification refused to grant a reasonable accommodation to Mr. David, and unlawfully terminated his employment, because of his age.

12

62.     As a direct and proximate result of the Defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

### SIXTH CAUSE OF ACTION
(New York State Human Rights Law)

63.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-62 of the Complaint.

64.     At all relevant times, Defendant employed more than four employees and constituted an "Employer" within the meaning of New York Executive Law §§ 292(1) and (5)

65.     As a result of the Defendants' discriminatory acts and unlawful employment practices, the Plaintiff was discriminated against in violation of New York Executive Law §296 *et seq.*

13

## PRAYER FOR RELIEF

**WHISEFORE**, Plaintiff Alvin David, respectfully requests that this Court enter a Judgment in his favor and against Defendant Konica Minolta Business Solutions, U.S.A., Inc., containing the following relief:

(a)    A declaratory judgment that the actions, conduct, practices, and policies of Defendant complained of herein violate the laws of the United States of America, the State of New York, and the City of New York;

(b)    An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c)    An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discrimination, retaliation and other unlawful conduct, as well as to take affirmative action, including but not limited to reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment;

(d)    An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past or future income, wages, compensation, seniority and other benefits of employment;

(e)    An award of liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

(f)    An award of damages in an amount to be determined at trial to compensate Plaintiff for all non-monetary and/or compensatory damages, including but

14

not limited to, compensation for severe mental anguish, depression, humiliation,

embarrassment, and emotional distress;

      (g)     An award of any and all other monetary and/or non-monetary losses

suffered by Plaintiff in an amount to be determined at trial;

      (h)     An award of punitive damages;

      (i)     An award of all costs that Plaintiff has incurred in this action, as well as

Plaintiff's reasonable attorneys' fee to the fullest extent permitted by law;

      (j)     An award of pre-judgment interest on all amounts due; and

      (k)     Such other relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

      Pursuant to 42 U.S.C. §1981A and Rule 38(b) of the Federal Rules of Civil

Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
       October 11, 2005

                    LAW OFFICES OF MARC A. RAPAPORT
                    Attorneys for Plaintiff

                    By: _____ (MR 5775)
                    Marc A. Rapaport, Esq.
                    350 Fifth Avenue, Suite 4400
                    New York, New York  10118
                    (212) 382-16000

15